COSMOCOM, INC., Plaintiff,

v.

MARCONI COMMUNICATIONS
INTERNATIONAL LIMITED,
Defendant.

No. CV–02–0050(TCP)(WDW).

United States District Court,
E.D. New York.

May 13, 2003.

Lonnie Coleman, Blau, Kramer, Wactler & Lieberman, P.C., Jericho, NY, for plaintiff.

Steven Wolowitz, Mayer, Brown, Rowe & Maw, New York City, for defendant.

## MEMORANDUM AND ORDER

PLATT, District Judge.

Before this Court are: (1) plaintiff CosmoCom, Inc.'s ("Plaintiff" or "CosmoCom") motion for summary judgment brought pursuant to Fed.R.Civ.P. 56 and (2) defendant Marconi Communications International Ltd.'s ("Defendant" or "Marconi") cross-motion for partial summary judgment on Defendant's counterclaim for declaratory judgment and to dismiss Plaintiff's claim for unjust enrichment. Both parties have submitted statements pursuant to Local Rule 56.1

Plaintiff's motion for summary judgment is hereby DENIED in full. Defendant's cross-motion for summary judgment on its counterclaim for declaratory judgment and for a dismissal of CosmoCom's unjust enrichment claim is likewise DENIED.

## BACKGROUND

The following facts are derived from the parties' Local Rule 56.1 Statements and are not in dispute except as noted.

### A. The Parties

Plaintiff CosmoCom is a Delaware corporation with its principal place of business in Melville, New York. Plaintiff is a software products company that develops and licenses software for multimedia contact center platforms. Defendant Marconi, headquartered in London, is a provider of communications and information technology.

### B. The Value Added Reseller Agreement & Amendment No. 1

This action involves a contract dispute. On or about March 3, 2000, CosmoCom and Marconi entered into the Value Added Reseller Agreement (the "Agreement"). Pursuant to the Agreement, CosmoCom agreed to deliver its software products to Marconi, and Marconi agreed to purchase and distribute CosmoCom's software products. In September 2000, the parties amended the Agreement with "Amendment No. 1." (Am.Compl., Ex. B.) Pursuant to Amendment No. 1, Marconi agreed to purchase a specific amount of product from CosmoCom during a defined period of time.

Section 14.2 of the Agreement states: "CosmoCom and [Marconi] agree that renewal of the Agreement will be assumed and automatically effective at the end of the first, second, third and fourth years, provided that neither party issues a notice of its intention to terminate." (Am. Compl., Ex. A, § 14.2.) Likewise, Section 14.3 of the Agreement sets forth the mechanism by which either party could terminate the Agreement if it chose not to renew the contract at the end of a given contract year.

In the event that a party wishes to terminate at the end of the first, second,

third or forth year, *Notice of such termination shall be issued at least three months before, to be effective at the end of the then current year.* Following such termination each party shall fulfill its obligations pursuant to any outstanding Purchase Orders and any rights and obligation of either party that may have accrued prior to the date of such termination shall not be affected.

(*Id.* § 14.3) (emphasis added).

CosmoCom alleges that under § 14.2, the Agreement was automatically renewed for additional one-year terms on March 3, 2001 and March 3, 2002. Marconi disputes this contention and claims that it notified CosmoCom of its intention to withdraw from the Agreement in October 2001, therefore, contrary to Plaintiff's allegations, the Agreement was not automatically renewed. Specifically, Marconi alleges that during a telephone conference between the parties on October 29, 2001, Marconi officials advised CosmoCom representatives that Marconi did not intend to renew the Agreement after completion of the first one-year period of performance. However, CosmoCom contends that during the course of the October 29th telephone conference, Marconi only "indicated that it was *considering* terminating the Agreement because it was 'moving in a different direction.'" (Polani Reply Aff. ¶ 8) (emphasis added). Plaintiff allegedly did not consider the statements of the Marconi representatives to amount to an official termination of the Agreement.

In support of its position, Plaintiff points to Section 18.5 of the Agreement, which states that all notices of termination must be in writing. Section 18.5 of the Agreement mandates, in relevant part: "Any notice required or permitted by this Agreement shall be in writing and shall be deemed given if sent by prepaid registered or certified Air Mail (if available), or sent by telex or facsimile or similar communication and confirmed by such Air Mail. . . ." (Am.Compl., Ex. A, § 18.5.) Therefore, Plaintiff claims that since such written notice was not provided on October 29, 2001, the Agreement was not terminated by Defendant on that date.

Contrary to Plaintiff's contentions, Marconi claims that CosmoCom was aware of Marconi's termination of the Agreement. Marconi contends that subsequent to October 29, 2001, the parties entered into discussions to resolve any outstanding issues that may have arisen prior to termination of the Agreement. Furthermore, Marconi states that prior to commencing this litigation in January 2002, Plaintiff never objected to the fact that Marconi's notice of termination was oral rather than written.

## C. Damages claimed by Plaintiff amount to $4,501,855

### 1. Amendment No. 1, Section 3(a): Initial Commencement Period (September 1, 2000—August 31, 2001)

Pursuant to Section 3(a) of Amendment No. 1, Marconi agreed to purchase from CosmoCom two million dollars ($2,000,000) worth of products to be delivered in four (4) quarterly installments of $500,000 each during the "Initial Commencement Period" starting September 1, 2000 and ending August 31, 2001. (Am.Compl., Ex. B, § 3(a).) In accordance with Section 3(a), CosmoCom completed three deliveries, each consisting of $500,175 worth of products, to Marconi on or about September 1, 2000 (Invoice # FORE 1002), December 1, 2000 (Invoice # FORE 1003), and March 1, 2001 (Invoice # FORE 1004). (Polani Aff. ¶ 4.) Marconi paid all three invoices in full.

Problems between the parties began to arise with the last of the quarterly shipments outlined in Section 3(a) of Amend-

ment No. 1. On or about June 1, 2001, CosmoCom alleges products were delivered to and accepted by Marconi, but Marconi failed to pay for this shipment, thus breaching the Agreement. Marconi disputes this allegation and claims Cosmo-Com failed to make the fourth scheduled delivery. Marconi claims it was Cosmo-Com that breached the Agreement because Plaintiff never delivered the products due in June 2001, even after Plaintiff became aware that Marconi never received the scheduled delivery. The parties do agree that Invoice # FORE 1005, in the amount of $500,175, was rendered to Marconi on July 1, 2001, and this invoice has yet to be paid. Accordingly, Plaintiff claims damages of $500,175 for this unpaid invoice.

### 2. Amendment No. 1, Section 3(b): The VCS Rollout Period (September 1, 2001—August 31, 2002)

Pursuant to Section 3(b) of Amendment No. 1, Marconi agreed to purchase from CosmoCom products in the aggregate of "four million dollars ($4,000,000) during the first four (4) calendar quarters of the Agreement following delivery and acceptance by [Marconi] of the Voice Connection Server ('VCS Rollout Period') on a pro-rata basis per calendar quarter." (Am. Compl., Ex. B, § 3(b).) Plaintiff claims that § 3(b) obligated Marconi to purchase four equal quarterly installments of one million dollars ($1,000,000) each during the VCS Rollout Period, which allegedly commenced on September 1, 2001 and continued through August 31, 2002. (Polani Aff. ¶¶ 6, 9.)

CosmoCom contends that Invoice # FORE 1006 in the amount of $1,000,000 was rendered on September 1, 2001 and

products were delivered in accordance therewith and accepted by Marconi on October 19, 2001. Marconi has not paid this invoice. Marconi disputes both that it accepted the products delivered and that the products were properly delivered and invoiced pursuant to the Agreement. Marconi also contends that the shipment in question was delivered at "the end of October 2001," not on October 19, 2001 as Plaintiff claims.[1] (Rowlands Aff. ¶ 12, Ex. B.)

Furthermore, on or about December 1, 2001, Plaintiff alleges products were delivered to and accepted by Marconi, and Invoice # FORE 1007 in the amount of $1,000,000 was rendered. Marconi has yet to pay this invoice as well but disputes that it accepted the products and that the products conformed to delivery and invoice requirements pursuant to the Agreement. Marconi contends that despite its alleged oral termination of the Agreement on October 29, 2001, CosmoCom continued to improperly send Marconi unwanted products as detailed above. Defendant claims it made repeated requests to CosmoCom representatives, including CosmoCom's President and CEO, Ari Sonesh ("Sonesh"), that Plaintiff cease further deliveries. However, CosmoCom continued to send shipments of products to Marconi.

In January 2002, CosmoCom commenced the instant action by filing its Complaint, alleging breach of contract, goods sold and delivered, accounts stated, and unjust enrichment. On February 25, 2002, Dennis Rowlands ("Rowlands"), Vice President of OSS Business Development for Marconi, sent a letter to Sonesh. The letter "confirmed" the October 29, 2001 termination of the Agreement and

---

1. This disputed date is particularly important because Marconi alleges it terminated the Agreement on October 29, 2001.

memorialized the return of all CosmoCom software products delivered after the Agreement was allegedly terminated. (Rowlands Aff. ¶ 13, Ex. B.)

On or about March 1, 2002, CosmoCom again delivered products to Marconi, pursuant to Amendment No. 1, and Invoice # FORE 1008 in the amount of $1,000,000 was rendered. Plaintiff alleges that after initially accepting the products, Marconi returned the March 1, 2002 shipment without explanation to or consent from Cosmo-Com. The invoice rendered on March 1, 2002 has yet to be paid by Defendant. Marconi disputes that it accepted the products and that the products were properly delivered and invoiced pursuant to the Agreement. In the same fashion, Marconi allegedly returned products delivered by CosmoCom on June 1, 2002, and the $1,000,000 invoice, # FORE 1009, has yet to be paid by Defendant.

Plaintiff contends that at no time has Marconi ever claimed that products delivered by CosmoCom were defective or otherwise non-conforming. Defendant disputes this allegation to the extent that Marconi alleges some products were delivered late, some products were not delivered at all, and many products were delivered improperly after termination of the Agreement.

Plaintiff claims damages of $4,000,000 for the four invoices rendered pursuant to Section 3(b) of Amendment No. 1.

### 3. Training Services

In or about April 2000, CosmoCom allegedly provided training services to Marconi. On April 14, 2000, invoices # MARC 1009 and # MARC 1010, each in the amount of $840, were rendered to Marconi. Marconi has allegedly yet to pay theses invoices. Plaintiff claims damages totaling $1680 for Marconi's failure to pay for the training services CosmoCom provided.

### D. Section 18.12 of the Agreement— The Limited Liability Clause

In addition to Plaintiff's motion for summary judgment, this Court must consider Marconi's motion for partial summary judgment on its counterclaim for declaratory judgment. In its counterclaim, Marconi seeks a declaration from this Court that Section 18.12 of the Agreement is enforceable, thereby capping Plaintiff's claims for damages at one million dollars ($1,000,000) and barring any claim by Plaintiff for consequential or indirect damages.

The basis of Defendant's counterclaim, Section 18.12 of the Agreement, states:

*Limitation of Liability.* NEITHER PARTY WILL BE LIABLE TO THE OTHER PARTY FOR ANY CLAIM(S) FOR INDIRECT, INCIDENTAL, CONSEQUENTIAL, OR SPECIAL DAMAGES INCLUDING BUT NOT LIMITED TO LOST PROFITS, LOST REVENUES, LOSS OF GOODWILL OR PUNITIVE DAMAGES WHETHER ARISING UNDER TORT OR CONTRACT (COLLECTIVELY "CONSEQUENTIAL DAMAGES") EVEN IF SUCH PARTY HAS BEEN MADE AWARE OF THE POSSIBILITY OF SUCH DAMAGES, OR FOR DIRECT DAMAGES IN EXCESS OF THE LESSER OF ONE MILLION DOLLARS ($1,000,000), OR THE TOTAL FEES PAID TO ONE PARTY BY THE OTHER UNDER THIS AGREEMENT, EXCEPT FOR INDEMNITY CLAIMS ARISING UNDER SECTION 8 HEREUNDER FOR CLAIMS ALLEGING INFRINGEMENT OR VIOLATION OF A PATENT, COPYRIGHT, TRADEMARK, TRADE SECRET, OR OTHER INTELLECTUAL PROPERTY RIGHTS.

(Am.Compl., Ex. A, § 18.12) (hereinafter the "Limited Liability Clause") (capitalization in original).

In addition to the Agreement language quoted above, Amendment No. 1 provides that "[e]xcept as otherwise set forth herein, all other terms and conditions of the Agreement shall remain in full force and effect." (Am. Compl., Ex. B. at 5.) Accordingly, Defendant claims that it cannot be held responsible for the total amount of damages that Plaintiff alleges in the instant action—over $4.5 million—given that the plain language of § 18.12 of the Agreement limited the parties' potential damages claims to $1 million and the adoption of Amendment No. 1 by the parties resulted in no change to the´ Limited Liability Clause.

Plaintiff opposes Defendant's contention and claims the language in the Limited Liability Clause conflicts with Defendant's obligations as outlined in Amendment No. 1. Pursuant to the language contained in Amendment No. 1, "[i]n the event of any conflict between the terms and conditions of this Amendment and the terms and conditions of the Agreement, the terms and conditions of this Amendment shall control and prevail." (Am. Compl., Ex. B. at 5.) CosmoCom argues that the purchase obligations agreed to between the parties and contained in Amendment No. 1 conflict with the language of the Limited Liability Clause. Accordingly, given that the language in Amendment No. 1 prevails over any conflicting language in the Agreement, Plaintiff argues that its claims for damages cannot be capped pursuant to the Limited Liability Clause.

## DISCUSSION

### A. Standard for Summary Judgment

A motion for summary judgment may not be granted unless the court determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Court must resolve all ambiguities and draw all inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Castle Rock Entm't, Inc. v. Carol Pulb'g Group,* 150 F.3d 132, 137 (2d Cir.1998) (citations omitted). "If there is any evidence in the record from which a reasonable inference could be drawn in favor of the non-moving party on a material issue of fact, summary judgment is improper." *Westinghouse Credit Corp. v. D'Urso,* 278 F.3d 138, 145 (2d Cir.2002) (citing *Chambers v. TRM Copy Centers Corp.,* 43 F.3d 29, 37 (2d Cir.1994)). The non-moving party must show that a disputed material fact exists in light of the substantive law by offering "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Dister v. Cont'l Group, Inc.,* 859 F.2d 1108, 1114 (2d Cir.1988) (quoting *Anderson,* 477 U.S. at 256, 106 S.Ct. 2505).

### B. Plaintiff's Motion for Summary Judgment

█ In support of its motion, Plaintiff cites to various cases in which courts have granted summary judgment for plaintiffs in contract disputes after finding the contract at issue was clear on its face and there were outstanding invoices the defendant had failed to pay. *E.g., Frontier Communications of the West, Inc. v. N. Am. Long Distance Corp.,* 2001 WL 1397856, at *4 (W.D.N.Y. Oct.24, 2001) (finding terms of the parties' agreement were "clear and concise and accordingly such terms will be enforced"); *Aldon Indus., Inc. v. Brown, et al.,* 647 F.Supp. 1558, 1561–62 (S.D.N.Y.1986) (awarding summary judgment in favor of plaintiff for unpaid invoices for goods shipped to and accepted by defendant); *Delta Tanning*

*Corp. v. Samber Leather Fashions, Ltd.,* 654 F.Supp. 1285, 1286 (S.D.N.Y.1987) (holding there was no dispute that the goods were ordered by defendant, were delivered to defendant, were not defective and were not paid for by defendant). Contrary to the cases cited by Plaintiff, however, little substantive discovery has taken place in this action and there are various issues of material fact yet to be resolved such that judgment as a matter of law against Defendant would be wholly inappropriate at this time.

The material issues of fact remaining include, *inter alia:* (i) whether CosmoCom delivered all shipments pursuant to the Agreement, and if not, whether CosmoCom's failure to cure this alleged breach precludes Plaintiff from bringing a claim of breach of contract against Defendant; (ii) whether deliveries by CosmoCom were timely made; (iii) whether Marconi accepted certain shipments or whether the shipments were returned; and (iv) whether the Agreement was terminated by Marconi, thereby absolving Defendant of any further obligations pursuant to the Agreement.[2]

As Marconi highlights, it disputes virtually every material fact included in Plaintiff's Local Rule 56.1 Statement. Without ruling on the legality of Defendant's alleged oral termination of the Agreement, this Court finds that enough material issues of fact remain to make summary judgment for Plaintiff improper at this stage in the litigation. This is particularly true in the instant case, given that the parties have conducted no depositions or other substantive discovery. Thus, Plaintiff's motion for summary judgment is hereby DENIED.

## C. Defendant's Cross–Motion for Partial Summary Judgment

### 1. Limited Liability Clause

■  Marconi moves for summary judgment on its counterclaim for declaratory judgment. Marconi seeks a declaration from the Court that: (i) Section 18.12 of the Agreement, the Limited Liability Clause, is enforceable; (ii) Plaintiff's claim for damages is capped at $1 million; and (iii) any claim for consequential or indirect damages is barred.

As stated in detail above, Amendment No. 1, adopted by the parties about six (6) months after the Agreement was signed, amended the parties' obligations under the Agreement, and specified additional periods during which CosmoCom would deliver goods that Marconi would then purchase and distribute. Amendment No. 1 states, in relevant part:

> The Agreement, as amended by this Amendment, constitutes the full and entire understanding and agreement between the parties with regard to the subjects hereof and no party shall be liable or bound to any other in any manner by any covenants or agreements

---

2.  Plaintiff argues that the October 29, 2001 telephone conference between the parties may not be considered a proper termination of the Agreement, given that § 18.5 of the Agreement explicitly states that all notices of termination must be in writing. Plaintiff further claims that even assuming, *arguendo*, Marconi properly gave notice of termination on October 29th, pursuant to § 14.3 of the Agreement such notice would not have been effective until the end of the year the notice was provided, i.e. March 3, 2002. Section 14.3 provides that notice of termination must be issued "at least three months before, to be effective at the end of, the then current year." Accordingly, Marconi would arguably have been obligated to pay for products delivered pursuant to purchase orders FORE # 1007 (December 1, 2001) and FORE # 1008 (March 1, 2002.) That being said, this Court declines at this juncture to rule on whether or not the Agreement was terminated properly, due to the copious issues of material fact that remain unresolved.

except as specifically set forth herein and therein, including, without limitation, any prior draft amendments to the Agreement which may have been inadvertently signed by CosmoCom or [Marconi].

In the event of any conflict between the terms and conditions of this Amendment and the terms and conditions of the Agreement, the terms and conditions of this Amendment shall control and prevail.

Except as otherwise set forth herein, all other terms and conditions of the Agreement shall remain in full force and effect.

(Am. Compl., Ex. B. at 5.)

Defendant claims that because Amendment No. 1 effected no change to the Limited Liability Clause (§ 18.12), the parties' potential damage claims remain capped at $1 million pursuant to the plain language of § 18.12. However, Plaintiff asserts that the purchase agreements contained in Amendment No. 1 conflict with the plain language of the Limited Liability Clause. Specifically, CosmoCom argues that the original Agreement entered into by the parties in March 2000 did not obligate Marconi to purchase any specified amount of product from CosmoCom. Six

months after the execution of the Agreement, in September 2000, Marconi and CosmoCom jointly executed Amendment No. 1, which altered the original bargain between the parties.[3] Plaintiff contends that in relying upon the Limited Liability Clause contained in the original Agreement, Defendant ignores the fact that this provision conflicts with and renders substantially meaningless Defendant's purchase commitments, which were negotiated and agreed upon as part of Amendment No. 1.

Plaintiff's argument is compelling. Plaintiff's first delivery pursuant to Amendment No. 1, for approximately $500,000 worth of goods, occurred in September 2000. Even if Defendant had attempted to terminate the Agreement at that point, the termination would not have been actualized until March 3, 2001, per the provisions regarding cancellation contained in § 14.3 of the Agreement. In the meantime, CosmoCom would have been bound to deliver, and Marconi would have been bound to accept, two additional shipments, dated December 1, 2000 and March 1, 2000, both for about $500,000. Therefore, even if Marconi had attempted to terminate the Agreement immediately after the parties signed Amendment No. 1, Marconi would still have been obligated to

---

**3.** Plaintiff alleges that Marconi desired to make a substantial equity investment of $10 million in CosmoCom in September 2000. Plaintiff claims this investment was made in anticipation of a potential public offering by CosmoCom or some other transaction that could have resulted in a substantial appreciation of Defendant's equity investment in CosmoCom. Allegedly in consideration for being allowed to make this investment, Marconi agreed in Amendment No. 1 to purchase a certain amount of product from CosmoCom over a specified period of time, as detailed *supra.*

Defendant refutes Plaintiff's contentions and properly argues that even if these statements were true, they may not play a part in

this Court's consideration of the instant issues. Although this Court may clearly look to the plain language of both the Agreement and Amendment No. 1 in determining whether the Limited Liability Clause governs, this Court is precluded by the parol evidence rule from considering any equity investment made by Marconi in CosmoCom unless that investment was specifically incorporated into the writings at bar. *See Point Developers, Inc. v. Fed. Deposit Ins. Corp.,* 921 F.Supp. 1014, 1019 (E.D.N.Y.1996) (Spatt, J.) ("Where the parties have reduced an agreement to an integrated writing, the parol evidence rule bars all evidence of prior or contemporaneous negotiations or agreements offered to modify or contradict the provisions of the writing.").

purchase over $1.5 million worth of goods from CosmoCom. This fact belies Marconi's contention that its liability should be limited to $1 million.

■ "General canons of contract construction require that where two seemingly conflicting contract provisions can be reconciled, a court is required to do so and give both effect." *Seabury Constr. Corp. v. Jeffrey Chain Corp.*, 289 F.3d 63, 70 (2d Cir.2002) (internal quotation marks and citation omitted). If this Court were to grant Defendant's request for a declaratory judgment and order a $1 million cap on damages pursuant to the Limited Liability Clause—contemplated by the parties before they agreed to the purchase commitments outlined in Amendment No. 1—Amendment No. 1 would be impermissibly rendered without full force and effect. Therefore, Defendant's request for a declaratory judgment stating that Plaintiff's damages claims should be capped at $1 million is hereby DENIED.

### 2. Unjust Enrichment

■ Defendant also moves to dismiss CosmoCom's claim for unjust enrichment, arguing that this claim is precluded by the existence of a valid contract governing the case at bar. "Quasi-contractual claims are not permitted when a valid and legally enforceable instrument exists to govern the events that arise out of the subject matter." *Freedman v. Freedman*, 116 F.Supp.2d 379; 381–82 (E.D.N.Y.2000) (Spatt, J.) (citations omitted). "Under New York law, the existence of an express contract between the plaintiff and [defendants] governing the particular subject matter of its claim for unjust enrichment precludes plaintiff from maintaining a cause of action sounding in quasi-contract against [defendants]." *Strojmaterialintorg v. Russian Am. Comm. Corp.*, 815 F.Supp. 103, 106 (E.D.N.Y.1993) (Wexler, J.) (internal quotation marks and citation omitted).

Although CosmoCom fails to counter Defendant's arguments regarding the unjust enrichment claim, Plaintiff does not specifically consent to the dismissal of this claim. The undersigned is reluctant at this stage in the litigation to dismiss Plaintiff's claim for unjust enrichment given the presence of various disputed facts, particularly those concerning Marconi's alleged termination of the contract. The preclusion of Plaintiff's unjust enrichment claim at this early juncture, before any substantive discovery has occurred, would leave Plaintiff with virtually no relief sounding in quasi-contract if, at a later stage, the Agreement or Amendment No. 1 was found to be invalid. Therefore, Defendant's motion for partial summary judgment requesting a dismissal of CosmoCom's unjust enrichment claim is hereby DENIED.

### *CONCLUSION*

Due to the abundance of disputed material facts at issue in this action, Plaintiff's motion for summary judgment must be, and the same hereby is, DENIED. Defendant's cross-motion for partial summary judgment on its counterclaim for declaratory judgment and for a dismissal of CosmoCom's unjust enrichment claim is also DENIED.

SO ORDERED.